DocuSign Envelope ID: BBC3926G-1871-4581-A798-93A70F94BC95

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JTH TAX, LLC d/b/a LIBERTY TAX SERVICE**,

     Plaintiff,

v.

**KARISMA PAGE, MR. BIG DREAMS INC., RANDY PAGE, PAGECO INC., DIAMOND EAGLE AGENCY LLC, DIAMOND EAGLE TAXES INC., DIAMOND EAGLE LLC, and MARJORIE PAGE,**

     Defendants.

_____/

Case No. _____

## PLAINTIFF'S VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty" or "Plaintiff"), by and through the undersigned counsel, for its Verified Complaint against Defendants Karisma Page, Mr. Big Dreams Inc. ("Mr. Big Dreams"), Randy Page, Pageco Inc. ("Pageco"), Diamond Eagle Agency LLC ("Diamond Eagle Agency"), Diamond Eagle Taxes Inc. ("Diamond Eagle Taxes"), Diamond Eagle LLC ("Diamond Eagle"), and Marjorie Page (collectively, "Defendants"), states as follows:

## INTRODUCTION

1.    This case presents a brazen example of former Liberty franchisees

(Karisma Page and Randy Page) and their family member (Marjorie Page) conspiring to circumvent the non-competition, non-solicitation, and post-termination obligations in their franchise agreements with Liberty.

2.      Until recently, Karisma Page and Mr. Big Dreams were the franchisees for five Liberty Tax Service® franchise locations in the Stroudsburg, Pennsylvania, area and two Liberty Tax Service® franchise locations in Brooklyn, New York, under seven separate franchise agreements.

3.      Karisma Page owns and controls Mr. Big Dreams, and personally agreed to perform all the obligations under her franchise agreements, including all obligations related to the covenants not to compete, covenants not to solicit, and Liberty's confidential information.

4.      Karisma Page's husband, Randy Page, and his company, Pageco, are the previous franchisee of Karisma Page and Mr. Big Dreams's seven Liberty franchise locations.

5.      Karisma Page, Mr. Big Dreams, Randy Page and Pageco are collectively referred to herein as the "Franchisee Defendants," and their franchise agreements are collectively referred to herein as the "Franchise Agreements."

6.      Liberty terminated all seven Franchise Agreements on January 19, 2024 after it discovered that the Franchisee Defendants had begun operating a competing tax business known as "Diamond Eagle," and converted six of their seven Liberty

franchise locations to "Diamond Eagle" locations in violation of the express terms of the Franchise Agreements.

7.  Marjorie Page has acted in concert with, participated with, and otherwise induced the Franchisee Defendants to breach their Franchise Agreements, and she has assisted the Franchisee Defendants in operating their competing tax business at their former Liberty locations.

8.  The Franchisee Defendants have disregarded their obligation to comply with the post-term non-compete and non-solicitation covenants in their Franchise Agreement

9.  The Franchisee Defendants have also ignored Liberty's requests to immediately return Liberty's confidential information and trade secrets, as required by the Franchise Agreements. Instead, Defendants are using Liberty's confidential information and trade secrets to compete against Liberty at their former Liberty franchise locations, and to service Liberty's customers.

10.  Liberty seeks a preliminary and permanent injunction requiring Defendants to comply with the post-term covenants and obligations in the Franchise Agreements, to include: (1) enjoining them from directly or indirectly, for a fee or charge, preparing or electronically filing income tax returns, or offering financial products within their former Liberty franchise territories or within 25 miles of their former Liberty franchise territories, including, without limitation, at their former

Liberty franchise locations, for two years; (2) enjoining them from directly or indirectly soliciting any customers served by their former Liberty franchise locations within the last 12 months that they were Liberty franchisees in their former Liberty franchise territories or within 25 miles of their former Liberty franchise territories for two years; (3) enjoining them from tortiously interfering with the Franchise Agreements; (4) enjoining them from using Liberty's confidential information and trade secrets, including Liberty's Operations Manual and client lists, files and records; (5) requiring them to immediately return Liberty's confidential information and trade secrets, including Liberty's Operations Manual and client lists, files and records; (6) requiring them to transfer to Liberty all telephone numbers for their former Liberty locations; and (7) requiring them to assign leases for their former Liberty franchise locations to Liberty.

## **PARTIES**

11.    Plaintiff JTH Tax LLC d/b/a Liberty Tax Service is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, Virginia 23456.

12.    LT Intermediate Holdco LLC (a Delaware limited liability company) is the sole member of Plaintiff JTH Tax LLC.

13.    LT Holdco LLC (a Delaware limited liability company) is the sole member of LT Intermediate Holdco, LLC.

14.   LTCT Intermediate Holdings, LLC (a Delaware limited liability company) is the sole member of LT Holdco LLC.

15.   LTCT Holdings, LLC (a Delaware limited liability company) is the sole member of LTCT Intermediate Holdings, LLC.

16.   BP LTCT, LLC (a Delaware limited liability company) is the sole member of LTCT Holdings, LLC.

17.   The members of BP LTCT, LLC are BasePoint Group Inc. (a Delaware Corporation with a principal place of business in New York), and Drake Enterprises, Ltd. (a North Carolina corporation with a principal place of business in North Carolina).

18.   Defendant Karisma Page is a resident of Pennsylvania, with a last known address of 258 Rising Meadow Way, East Stroudsburg, PA 18301. Karisma Page is married to Randy Page.

19.   Defendant Mr. Big Dreams Inc. is a Pennsylvania corporation, with a registered office address of 528 Seven Bridges Road, East Stroudsburg, PA 18301. The Articles of Incorporation for Mr. Big Dreams Inc. were signed by Karisma Page as the incorporator. Karisma Page is the President of Mr. Big Dreams. Attached hereto as Exhibit 1 is a true and correct copy of the Articles of Incorporation for Mr. Big Dreams Inc.

20.   Defendant Randy Page is a resident of Pennsylvania, with a last known

address of 258 Rising Meadow Way, East Stroudsburg, PA 18301. Randy Page is married to Karisma Page.

21.    Defendant Pageco Inc. [PA] is a Pennsylvania corporation, with a registered office address of 365 Wickes Road, Bushkill, PA 18324. The Articles of Incorporation were signed by Randy Page as the incorporator. Randy Page is the President. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Articles of Incorporation for Pageco Inc. [PA].

22.    Defendant Pageco Inc. [NY] is a New York corporation, with a registered office address of 528 Seven Bridges Road, East Stroudsburg, PA 18301, and a principal executive office address of 258 Rising Meadow Way, East Stroudsburg, PA 18302. Randy Page is the Chief Executive Officer and Agent. Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Certificate of Incorporation, and the entity information page for Pageco Inc. [NY] on the New York Department of State website.[1]

23.    Defendant Diamond Eagle Agency LLC is a Pennsylvania limited liability company, with a registered office address of 528 Seven Bridges Road, East Stroudsburg, PA 18301. The Certificate of Organization for Diamond Eagle Agency LLC was signed by Randy Page as the organizer. The Certificate of Organization

---

[1] Randy Page created two "Pageco, Inc." entities, one is a Pennsylvania corporation and one is a New York corporation. Both entities have registered addresses in Pennsylvania. These two entities are collectively referred to herein as "Pageco."

for Diamond Eagle Agency LLC also identifies Karisma Page as an agent to receive mail for the company. Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the Certificate of Organization for Diamond Eagle Agency LLC. On information and belief, Diamond Eagle Agency LLC does business as "Diamond Eagle Tax Insurance & Loans." *See* https://www.diamondeaglellc.com/.

24.     Defendant Diamond Eagle Taxes Inc. is a Pennsylvania corporation, with a registered office address of 221 Skyline Drive, Suite 208-207, East Stroudsburg, PA 18301 (which is a UPS address). The Articles of Incorporation for Diamond Eagle Taxes Inc. were signed by Marjorie Page as the incorporator. The Articles of Incorporation for Diamond Eagle Taxes Inc. also identify Randy Page as an agent to receive mail for the corporation. Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the Articles of Incorporation for Diamond Eagle Taxes Inc. On information and belief, Diamond Eagle Taxes Inc. does business as "Diamond Eagle Tax Insurance & Loans." *See* https://www.diamondeaglellc.com/.

25.     Defendant Diamond Eagle LLC is a Pennsylvania limited liability company. On information and belief, Diamond Eagle LLC has a registered office address of 221 Skyline Drive, Suite 208-207, East Stroudsburg, PA 18301 (which is a UPS address). On information and belief, Diamond Eagle LLC does business as "Diamond Eagle Tax Insurance & Loans." *See* https://www.diamondeaglellc.com/.

26.     Marjorie Page is a resident of New York, with a last known address of

239 E 86th Street, Brooklyn, NY. On information and belief, Marjorie Page is the sister of Randy Page and the sister-in-law of Karisma Page.

## JURISDICTION AND VENUE

27.     This Court has personal jurisdiction over Karisma Page because she is a citizen of Pennsylvania.

28.     This Court has personal jurisdiction over Mr. Big Dreams Inc. because it is a Pennsylvania entity with a principal place of business in Pennsylvania.

29.     This Court has personal jurisdiction over Randy Page because he is a citizen of Pennsylvania.

30.     This Court has personal jurisdiction over Pageco Inc. because both Pageco Inc. [PA] and Pageco Inc. [NY] maintain a principal place of business in Pennsylvania.

31.     This Court has personal jurisdiction over Diamond Eagle Agency LLC because it is a Pennsylvania entity with a principal place of business in Pennsylvania.

32.     This Court has personal jurisdiction over Diamond Eagle Taxes Inc. because it is a Pennsylvania entity with a principal place of business in Pennsylvania.

33.     This Court has personal jurisdiction over Diamond Eagle LLC because it is a Pennsylvania entity with a principal place of business in Pennsylvania.

34.     This Court has personal jurisdiction over Marjorie Page because, among other reasons, Marjorie Page is the incorporator of Diamond Eagle Taxes

Inc., and as further discussed below, Marjorie Page listed Pennsylvania properties as the business addresses for "Diamond Eagle" in documents submitted to the IRS. Moreover, as detailed below, through "Diamond Eagle," Marjorie Page regularly conducts business in Pennsylvania.

35.    This Court has original (federal question) subject matter jurisdiction over this claim pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and Lanham Act, 15 U.S.C. § 1125(a), as well as supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the DTSA and Lanham Act.

36.    Pursuant to 28 U.S.C. §§ 1391(b)(2), this action is properly venued in the United States District Court for the Middle District of Pennsylvania because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTUAL BACKGROUND

### A.    Liberty's Franchise System.

37.    Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States.

38.    Liberty owns the federally-registered Liberty Tax Service® trademarks, service marks, logos and derivations thereof (the "Marks"), and has spent substantial

time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements.

39.    Pursuant to the terms of franchise agreements, Liberty discloses certain confidential information and trade secrets, including Liberty's confidential Operations Manual, methods of operation, customer information and records, and marketing information (collectively, "Confidential Information"), to franchisees.

40.    Liberty franchisees are contractually obligated, upon termination, expiration, or nonrenewal of a franchise agreement, to return, and desist from using or disclosing, all Liberty Confidential Information.

41.    Liberty has invested substantial time and money in maintaining and improving its franchise system, including, *inter alia*: (1) developing and maintaining service and product quality; (2) developing and maintaining uniform designs and markings for its services; (3) licensing trademarks and other proprietary information to franchisees; and (4) training franchisees.

42.    Based upon Liberty's investment in, and development of, its franchise system and Confidential Information, Liberty has grown to be one of the largest tax preparation franchises in the United States.

43.    Liberty plays an important role in the national economy, with a network of over 21,000 tax preparers.

44.    Liberty's busiest time of year are the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

**B.    The Franchisee Defendants' Acquisitions of Liberty Franchises**

45.    Beginning in 2012, the Franchisee Defendants acquired several Liberty franchise locations in and around the Stroudsburg, PA and Brooklyn, NY areas, including as follows:

**1.    Franchise Territory PA019**

46.    On October 17, 2017, Randy Page and Pageco executed a Purchase and Sale Agreement, pursuant to which they acquired a franchise territory known as PA019 from a third party franchisee.

47.    Effective November 15, 2017, Randy Page and Pageco executed a Franchise Agreement for the PA019 territory. Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the November 15, 2017 Franchise Agreement for the PA019 territory.

48.    Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the PA019 territory to Karisma Page and Mr. Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-

term covenants in the Franchise Agreement for the PA019 territory. Attached hereto as Exhibit 7 is a true and correct copy of the Assignment and Amendment of the Franchise Agreement for the PA019 territory. Attached hereto as Exhibit 8 is a true and correct copy of the related Accounts and Notes Receivable Guaranty Agreement.

49.    Effective November 22, 2022, Karisma Page and Mr. Big Dreams executed a Renewal Amendment to Liberty Tax Service Franchise Agreement, which extended the Franchise Agreement for the PA019 territory for five years. Attached hereto as Exhibit 9 is a true and correct copy of the Renewal Amendment for the PA019 territory.

50.    Pursuant to the Franchise Agreement for the PA019 territory, the Franchisee Defendants operated a Liberty franchise office at 1240 N. 9th Street, Stroudsburg, PA (the "9th Street Location").

51.    There has been a Liberty franchise office at the 9th Street Location since approximately 2012.

### 2.    Franchise Territory PA030

52.    On October 17, 2017, Randy Page and Pageco executed a Purchase and Sale Agreement, pursuant to which they acquired a franchise territory known as PA030 from a third party franchisee.

53.    Effective November 15, 2017, Randy Page and Pageco Inc. executed a Franchise Agreement for the PA030 territory. Attached hereto as Exhibit 10 is a true

and correct copy of the November 15, 2017 Franchise Agreement for the PA030 territory.

54.     Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the PA030 territory to Karisma Page and Mr. Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the PA030 territory. *See* Exs. 7-8.

55.     Effective November 22, 2022, Karisma Page and Mr. Big Dreams executed a Renewal Amendment to Liberty Tax Service Franchise Agreement, which extended the Franchise Agreement for the PA030 territory for five years. Attached hereto as Exhibit 11 is a true and correct copy of the Renewal Amendment for the PA030 territory.

56.     Pursuant to the Franchise Agreements for the PA030 territory, the Franchisee Defendants operated a Liberty franchise office at 528 Main Street, Stroudsburg, PA (the "Main Street Location").

57.     There has been a Liberty franchise office at the Main Street Location since approximately 2011.

### 3.    Franchise Territory PA358

58.    On October 17, 2017, Randy Page and Pageco executed a Purchase and Sale Agreement, pursuant to which they acquired a franchise territory known as PA358 from a third party franchisee.

59.    Effective November 15, 2017, Randy Page and Pageco Inc. executed a Franchise Agreement for the PA358 territory. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of the November 15, 2017 Franchise Agreement for the PA358 territory.

60.    Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the PA358 territory to Karisma Page and Mr. Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the PA358 territory. *See* Exs. 7-8.

61.    Effective November 22, 2022, Karisma Page and Mr. Big Dreams executed a Renewal Amendment to Liberty Tax Service Franchise Agreement, which extended the Franchise Agreement for the PA358 territory for five years. Attached hereto as <u>Exhibit 13</u> is a true and correct copy of the Renewal Amendment for the PA358 territory.

62.     Pursuant to the Franchise Agreements for the PA358 territory, the Franchisee Defendants operated a Liberty franchise office at 156 Eagles Glen Plaza, East Stroudsburg, PA (the "Eagles Glen Plaza Location").

63.     There has been a Liberty franchise office at the Eagles Glen Plaza Location since approximately 2010.

### 4.    Franchise Territory PA021

64.     Effective April 24, 2012, Randy Page and Pageco executed a Franchise Agreement for a territory known as PA021. Attached hereto as <u>Exhibit 14</u> is a true and correct copy of the April 24, 2012 Franchise Agreement for the PA021 territory

65.     Effective June 6, 2017, Randy Page and Pageco executed a renewed Franchise Agreement for the PA021 territory. Attached hereto as <u>Exhibit 15</u> is a true and correct copy of the June 6, 2017 Franchise Agreement for the PA021 territory.

66.     Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the PA021 territory to Karisma Page and Mr. Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the PA021 territory. *See* Exs. 7-8.

67.     Effective February 14, 2022, Karisma Page and Mr. Big Dreams executed a Franchise Agreement for the PA021 territory. Attached hereto as <u>Exhibit</u>

DocuSign Envelope ID: BBC3926C-1871-4581-A7B8-93A70FB4BC0E

16 is a true and correct copy of the February 14, 2022 Franchise Agreement for the PA021 territory.

68.    Pursuant to the Franchise Agreements for the PA021 territory, the Franchisee Defendants operated a Liberty franchise office at 2657 Route 940, Pocono Summit, PA (the "Route 940 Location").

69.    There has been a Liberty franchise office at the Route 940 Location since approximately 2012.

**5.    Franchise Territory PA353**

70.    Effective March 21, 2016, Randy Page and Pageco executed a Franchise Agreement for a territory known as PA353. Attached hereto as Exhibit 17 is a true and correct copy of the March 21, 2016 Franchise Agreement for the PA353 territory.

71.    Effective February 19, 2021, Randy Page and Pageco executed a renewed Franchise Agreement for the PA353 territory. Attached hereto as Exhibit 18 is a true and correct copy of the February 19, 2021 Franchise Agreement for the PA353 territory.

72.    Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the PA353 territory to Karisma Page and Mr.

DocuSign Envelope ID: BBC3926C-1871-4581-A7B8-93A70F04BC0F

Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the PA353 territory. *See* Exs. 7-8.

73.    Pursuant to the Franchise Agreements for the PA353 territory, the Franchisee Defendants operated a Liberty franchise office at 21 Fox Run Lane, East Stroudsburg, PA[2] (the "Fox Run Lane Location").

74.    There has been a Liberty franchise office at the Fox Run Lane Location since approximately 2011.

### 6.    Franchise Territory NY153

75.    Effective October 10, 2012, Randy Page and Pageco executed a Franchise Agreement for a territory known as NY153. Attached hereto as Exhibit 19 is a true and correct copy of the October 10, 2012 Franchise Agreement for the NY153 territory.

76.    Effective June 15, 2018, Randy Page and Pageco executed a Franchise Agreement for the NY153 territory. Attached hereto as Exhibit 20 is a true and correct copy of the June 15, 2018 Franchise Agreement for the NY153 territory.

77.    Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the NY153 territory to Karisma Page and Mr.

---

[2] Also sometimes referred to as 232 or 239 Fox Run Lane, East Stroudsburg, PA.

Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the NY153 territory. *See* Exs. 7-8.

78.    Effective June 15, 2023, Karisma Page and Mr. Big Dreams executed a Renewal Amendment to Liberty Tax Franchise Agreement for the NY153 territory, renewing and extending the term of the Franchise Agreement by five years. Attached hereto as Exhibit 21 is a true and correct copy of the Renewal Amendment for the NY153 territory.

79.    Pursuant to the Franchise Agreements for the NY153 territory, the Franchisee Defendants operated a Liberty franchise office at 928 Utica Avenue, Brooklyn, NY (the "Utica Avenue Location").

80.    There has been a Liberty franchise office at the Utica Avenue Location since approximately 2008.

**7.    Franchise Territory NY536**

81.    On November 28, 2016, Randy Page and Pageco executed a Purchase and Sale Agreement, pursuant to which they acquired a franchise territory known as NY536 from a third party franchisee.

82.    Effective November 28, 2016, Randy Page and Pageco executed a Franchise Agreement for the NY536 territory. Attached hereto as Exhibit 22 is a true and correct copy of the November 28, 2016 Franchise Agreement for the NY536 territory.

83.    Effective February 13, 2022, Randy Page and Pageco executed an Assignment and Amendment to the Franchise Agreement pursuant to which they assigned the Franchise Agreement for the NY536 territory to Karisma Page and Mr. Big Dreams. Randy Page and Pageco also agreed to remain fully bound to the post-term covenants in the Franchise Agreement for the NY536 territory. *See* Exs. 7-8.

84.    Effective February 14, 2022, Karisma Page and Mr. Big Dreams executed a renewed Franchise Agreement for the NY536 territory. Attached hereto as Exhibit 23 is a true and correct copy of the renewed Franchise Agreement for the NY536 territory.

85.    Pursuant to the Franchise Agreements for the NY536 territory, the Franchisee Defendants operated a Liberty franchise office at 893 Flatbush Avenue, Brooklyn, NY (the "Flatbush Avenue Location").

86.    There has been a Liberty franchise office at the Flatbush Avenue Location since approximately 2012.

### C.    Obligations under the Franchise Agreements.

87.    Karisma Page, as the individual signatory for Mr. Big Dreams, personally agreed to perform all the obligations under her Franchise Agreements, including all obligations related to the covenants not to compete, covenants not to solicit, and confidentiality obligations. *See* Exs. 6, 10, 12, 16, 18, 20, at § 27.

88.     Randy Page, as the individual signatory for Pageco, personally agreed to perform all the obligations under his Franchise Agreements, including all obligations related to the covenants not to compete, covenants not to solicit, and confidentiality obligations. *See id*.

89.     In exchange for Liberty's grant of a franchisee allowing them to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," the Franchisee Defendants agreed to certain obligations while operating under the Franchise Agreements, as well as post-term. The terms, conditions, and provisions of each Franchise Agreement are the same in all material respects. *See id.*, § 1.

90.     Pursuant to the Franchise Agreements, Liberty provided the Franchisee Defendants with training in franchise operation, marketing, advertising, sales, and business systems. The Franchisee Defendants also received copies of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system. Defendants agreed to keep these materials confidential in perpetuity, including following the termination or expiration of the Franchise Agreements. *See id.,* §§ 5, 12.

91.     The term of each Franchise Agreement is five years. *See id.,* § 2.

92.     Pursuant to Section 4 of the Franchise Agreements, the Franchisee Defendants agreed to pay Liberty certain royalties and fees. *See id.,* § 4(d).

93.     Section 8(b) of the Franchise Agreements permits Liberty to terminate the Franchise Agreements without notice and opportunity to cure if, among other reasons, the Franchisee Defendants: (1) "abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto"; (2) "fail to open for business in the Territory by January 2"; (3) "fail to use the software, electronic filing services or Financial Products Liberty provides or recommends"; (4) "under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to [their] acquisition or operation of the Franchised Business or [their] rights or obligations under this Agreement"; or (5) "commit three (3) or more breaches of [the Franchise Agreement], the Operations Manual, or any other agreement (including promissory notes) with Liberty . . . in any twelve (12) month period . . ." *Id*., §§ 8(b)(iv), (v), (viii), (xi) and (xii).

94.     Section 9 of the Franchise Agreements sets forth certain of the Franchisee Defendants' post-term obligations, including (among others) the obligations to: (1) transfer to Liberty all phone numbers used in connection with the Franchised Business; (2) assign to Liberty (if Liberty elects) their interests in any

DocuSign Envelope ID: BBC3926C-1871-4581-A7B8-93A70FB4BC8E

leases for the Franchised Business; (3) deliver to Liberty all customer lists, tax returns, files, and records; (4) return Liberty's confidential Operations Manual; (5) forever refrain from using Liberty's Confidential Information; and (6) adhere to the Franchise Agreements' post-term non-competition and non-solicitation covenants. *See id.,* § 9.

95.     Pursuant to Section 10(a) of the Franchise Agreements, the Franchisee Defendants agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreements, the Franchisee Defendants agreed "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a . . . Liberty Tax franchisee pursuant to a valid . . . Liberty franchise agreement." *Id.,* § 10(a).

96.     Pursuant to Section 10(b) of the Franchise Agreements, the Franchisee Defendants agreed to a post-term covenant not to compete, which stated: "For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *Id.,* § 10(b).

97.     Pursuant to Section 10(d) of the Franchise Agreements, the Franchisee Defendants agreed to a post-term covenant not to solicit, which stated: "For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchise Business… [they would] not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of [their] prior Liberty offices within the last twelve (12) months that [they were] a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." *Id.,* § 10(d).

98.     Also pursuant to Section 10(d) of the Franchise Agreements, the Franchisee Defendants agreed: "[F]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ." *Id.*

99.     Pursuant to Section 10(e) of the Franchise Agreements, the Franchisee Defendants agreed to a covenant not to lease, which stated: "[Franchisee Defendants] agree that during the term of this Agreement, [they] will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will

offer income tax preparation at such an office. [Franchisee Defendants] also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of [their] former Liberty office locations in the Territory, [they] will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, [Franchisee Defendants] agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where [their] former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of [their] office location to a person or entity who will offer income tax preparation at such office locations." *Id.,* § 10(e).

100.   Pursuant to Section 10(f) of the Franchise Agreements, the Franchisee Defendants agreed "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty…" *Id.,* § 10(f).

101.   The restrictive covenants contained in Section 10 of the Franchise Agreements are necessary to protect Liberty's legitimate, protectable interest in its franchise business, including but not limited to:

   a.   Maintaining and protecting Liberty's goodwill and customer loyalty;

   b.   Retaining customer relationships;

c. Liberty's customer lists, customer identification, tax returns, and other confidential information;

d. Preserving Liberty's ability to facilitate the operation of Liberty franchises where Liberty franchise offices are currently located; and

e. Protecting Liberty from irreparable harm.

102. When a franchisee operates a competing tax business in violation of Section 10 of the Franchise Agreement, Liberty loses customer goodwill and loyalty because customers associate Liberty with the competing location and personnel. Additionally, it is significantly more difficult to find a replacement franchisee when the former franchisee operates a competing tax business in their former franchise territory in violation of Section 10 of the Franchise Agreement.

103. Pursuant to Section 10(h) of the Franchise Agreements, the Franchisee Defendants agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, the Franchisee Defendants agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." The Franchisee Defendants also expressly agreed to "waive any requirement that Liberty post a bond related to any temporary restraining order or

injunctions requested as a result of an alleged violation of Sections 9 and 10." *Id.,* §

10(h).

104.   Pursuant to Section 10(i) of the Franchise Agreements, the Franchisee

Defendants agreed that "[t]he covenants contained in Section 10 shall survive any

termination or expiration of this Agreement." *Id.,* § 10(i).

105.   Pursuant to Section 12(a) of the Franchise Agreements, the Franchisee

Defendants agreed "not to directly or indirectly communicate, divulge, or use any

Confidential Information for [their] personal benefit or the benefit of any other

person or legal entity except as specifically provided by the terms of this Agreement

or permitted by Liberty in writing prior to disclosure." They further agreed that, upon

termination of the Franchise Agreements, they would "never use or disclose . . .

Liberty's Confidential Information in any manner whatsoever, including, without

limitation, in the design, development or operation of any business substantially

similar to the Franchised Business." *Id.,* § 12(a).

106.   Pursuant to Section 12(c) of the Franchise Agreements, the Franchisee

Defendants agreed to: "(i) refrain from using Confidential Information for any

purpose other than the operation of the Franchised Business pursuant to this

Agreement; (ii) maintain absolute confidentiality of Confidential Information during

and after the term of this Agreement; (iii) not make unauthorized copies of any

portion of Confidential Information; and (iv) adopt and implement all reasonable

procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information." *Id.*

107.    Section 16 of the Franchise Agreements contains a grant of security interest pursuant to which the Franchisee Defendants agreed: "As security for the performance of your obligations under this Agreement, including payments owed to Liberty, you hereby grant Liberty a security interest in all of the assets of your Franchised Business, including inventory, accounts, supplies, contracts, and proceeds and products of all those assets . . . If you default in any of your obligations under this Agreement, Liberty may exercise all rights of a secured creditor granted to Liberty by law, in addition to our other rights under this Agreement and at law." *See id.,* § 16.

108.    Section 18 of the Franchise Agreements contains a mandatory choice of law provision, which states: "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." *Id.,* § 18(a).

109.    In Section 27 of the Franchise Agreements, the Franchisee Defendants agreed that Karisma Page and Randy Page, as signatories to the Franchisee Agreement, would: "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments

specified herein, pay any other promissory notes and other debts due to Liberty . . ."
*Id.,* § 27.

**D.    Obligations under the February 13, 2022 Assignment and Amendment.**

110.    As set forth above, in Sections 10(b) and 10(d) of the Franchise Agreement, Randy Page and Pageco agreed to be bound by the post-term covenants not to compete and not to solicit for two years following the transfer of the Franchise Agreement.

111.    In the February 13, 2022 Assignment and Amendment, Randy Page and Pageco again expressly agreed "to remain fully bound to the post-term covenants contained in [the Franchise Agreements]," including the post-term non-compete and non-solicitation covenants. *See* Ex. 7.

**E.    The Franchisee Defendants breached their Franchise Agreements by converting their former Liberty offices into a competing tax business known as "Diamond Eagle."**

112.    In January 2024, Liberty became aware that the Franchisee Defendants had violated the Franchise Agreements by converting six of their seven Liberty locations into a competing tax business known as my "Diamond Eagle."

113.    In so doing, Karisma Page and Mr. Big Dreams violated the in-term covenant not to compete in Section 10(a) of the Franchise Agreements, which prohibited them from directly or indirectly competing against Liberty during the term of the Franchise Agreements.

114.   Also in so doing, Randy Page and Pageco violated the post-term covenant not to compete in Section 10(b) of the Franchise Agreements, which prohibited them from directly or indirectly competing against Liberty within 25 miles of the boundaries of their franchise territories for two years following their assignment of the Franchise Agreements to Karisma Page and Mr. Big Dreams.

## 1.   Defendants own and/or operate "Diamond Eagle."

### a.   Randy Page owns and/or operates "Diamond Eagle."

115.   Randy Page's Linkedin profile states that he is the Chief Executive Officer of "Diamond Eagle." Below is a screenshot of Randy Page's Linkedin profile:



116.   Randy Page's business card identifies him as an owner of "Diamond Eagle." Below is a screenshot of Randy Page's business card:



117.    Corporate filings submitted to the Pennsylvania Department of State identify Randy Page as the organizer of Diamond Eagle Agency LLC, and as an agent to receive mail for Diamond Eagle Taxes Inc. *See* Exs. 4-5.

> ### b.    Karisma Page owns and/or operates "Diamond Eagle."

118.    Karisma Page controls the locations where the "Diamond Eagle" offices are located because she operated Liberty offices at those very same locations up until January 2024.

119.    Corporate filings submitted to the Pennsylvania Department of State identify Karisma Page as an agent to receive mail for Diamond Eagle Agency LLC. *See* Ex. 4.

DocuSign Envelope ID: BBC3926C-4971-4591-A7B8-93A70F94BC8E

120.    Karisma Page frequently promotes "Diamond Eagle" on social media, including, by way of example only, the following posts on her "karismapagelifecoach" Instagram account:







c. <u>Marjorie Page owns and/or operates "Diamond Eagle."</u>

121.   Corporate filings submitted to the Pennsylvania Department of State identify Marjorie Page as the incorporator of Diamond Eagle Taxes Inc. *See* Ex. 5.

122.   Marjorie Page is currently preparing taxes for Liberty customers at the "Diamond Eagle" offices. Below are samples of recent Google reviews from

"Diamond Eagle" customers referencing Marjorie Page (some of whom Marjorie

Page serviced for years while at Liberty):



123.   Marjorie Page also applied for six Electronic Filing Identification

Numbers ("EFINs") from the IRS on behalf of "Diamond Eagle."

124.   An EFIN is a six-digit tax identification number issued by the IRS in

order to electronically file tax returns. EFINs are not transferable and there must be

an EFIN application for each office location. *See* https://www.irs.gov/tax-

professionals/how-to-maintain-monitor-and-protect-your-efin.

125.   According to publicly available information on the IRS website,

Marjorie Page applied for three EFINs on July 13, 2023 and three additional EFINs

on November 2, 2023, on behalf of "Diamond Eagle."

126.    On information and belief, Defendants are using these EFINs to file tax returns at their "Diamond Eagle" locations.

127.    Marjorie Page listed the following addresses as the business addresses associated with the EFINs: (1) 528 Seven Bridges Road, East Stroudsburg, PA 18301; (2) 365 Wickes Road, Bushkill, PA 18324; (3) 86 Lower Lake View Drive, East Stroudsburg PA 18302; (4) 6114 Decker Road, Bushkill, PA 18324; (5) 163 Cambridge Court, Bushkill, PA 18324; and (6) 1145 Dorset Drive, Bushkill, PA 18324.

128.    528 Seven Bridges Road, East Stroudsburg, PA 18301 is the registered office address for Mr. Big Dreams, Diamond Eagle Agency LLC, and Pageco Inc. [NY]. *See* Exs. 1, 3, 4.

129.    365 Wickes Road, Bushkill, PA 18324 is the registered office address for Pageco Inc. [PA]. *See* Ex. 2.

130.    86 Lower Lake View Drive, East Stroudsburg PA 18302; 6114 Decker Road, Bushkill, PA 18324; and 163 Cambridge Court, Bushkill, PA 18324 are all properties owned by Wakanda Properties, LLC. *See* https://www.wakandapropllc.com/en/all-properties (last visited Feb. 5, 2024).

131.    Wakanda Properties, LLC is a real estate investment and management company, which rents vacation homes in the Poconos. *See id.*

132. Randy Page owns and operates Wakanda Properties, LLC in partnership with Marjorie Page. Attached hereto as <u>Exhibit 24</u> is a copy of the Mortgages and Deeds section of the April 29, 2022 edition of the Pike County Legal Journal which identifies Randy Page's association with Wakanda Properties, LLC (available at https://goodstuffconnections.com/wp-content/uploads/2022/04/Legal-Journal-PC-2022-04-29.pdf).

133. Wakanda Properties, LLC frequently promotes "Diamond Eagle" on social media, including the below Instagram posts from October 23, 2023 and January 24, 2024:




DocuSign Envelope ID: BBC3926C-4871-4581-A7B8-93A70F04BC8E

    **2.    "Diamond Eagle's" website establishes that "Diamond Eagle" provides tax services, and that Defendants converted six of their Liberty offices into "Diamond Eagle" locations.**

134.   The homepage of the "Diamond Eagle" website specifically states that the company provides tax preparation services. *See* https://www.diamondeaglellc.com/ (last visited Feb. 5, 2024). Below is a screenshot of the homepage of the "Diamond Eagle" website:



135.   The "Diamond Eagle" website states that the following six Liberty franchise locations now operate as "Diamond Eagle" locations: (1) the 9th Street Location; (2) the Main Street Location; (3) the Route 940 Location; (4) the Fox Run Lane Location; (5) the Utica Avenue Location; and (6) the Flatbush Avenue

Location. *See* https://www.diamondeaglellc.com/contact-us (last visited Feb. 5, 2024). Below is a screenshot of the contact page of the "Diamond Eagle" website:



136.   The only former Liberty location that was not converted into a "Diamond Eagle" location was the Eagles Glen Plaza Location, which Defendants have abandoned. *See* Sandy DeAndrea Decl., ¶¶ 7-14, Ex. A.

> **3.    Private investigators confirmed that six of the Franchisee Defendants' former Liberty offices are now operating as "Diamond Eagle" locations, and offering tax services.**

137.   On January 15, 2024, Liberty retained a private investigator to investigate Defendants' unlawful conduct at their former Liberty locations in New York (i.e., the Utica Avenue Location and the Flatbush Avenue Location). *See* Lemma Decl., ¶¶ 5-6.

138.   On January 17, 2024, Liberty retained private investigators to investigate Defendants' unlawful conduct at their former Liberty locations in Pennsylvania (i.e., the 9th Street Location, the Main Street Location, the Route 940 Location, and the Fox Run Lane Location). *See* Frank DeAndrea Decl., ¶¶ 7-8.

139.   Each of these locations has "Diamond Eagle" signage visible on the exterior and interior. *See* Frank DeAndrea Decl., ¶ 10, Exs. A-D; Lemma Decl., ¶¶ 10, 18.

140.   Each of these "Diamond Eagle" locations offers tax preparation and filing services. *See* Frank DeAndrea Decl., ¶ 11, Exs. A-D; Lemma Decl., ¶¶ 10, 18, Exs. A-B.

141.   Each of these "Diamond Eagle" locations has exterior signage, and signage in the windows, advertising tax services. *See* Frank DeAndrea Decl., ¶ 12, Exs. A-D; Lemma Decl., ¶¶ 10, 18, Exs. A-B.

142.   At all of the "Diamond Eagle" locations in Pennsylvania, employees distributed "Diamond Eagle" business cards. *See* Frank DeAndrea Decl., ¶ 13, Exs. A-D.

> **4.   Defendants are creating customer confusion in order to capitalize on Liberty's goodwill at their former Liberty locations.**

143.   Defendants are intentionally creating customer confusion regarding whether the "Diamond Eagle" locations are affiliated with Liberty in order to capitalize on Liberty's goodwill at their former Liberty locations.

144.   For example, below is a recent Google review of the "Diamond Eagle" office at the Flatbush Avenue Location posted by a long-time Liberty customer who believed the "Diamond Eagle" office was a Liberty office:



145.   Also for example, below is another recent Google review of the "Diamond Eagle" office at the Main Street Location posted by a customer who believed the "Diamond Eagle" office was a Liberty office:



146.   Defendants are intentionally creating this customer confusion by: (a) advertising their previous affiliation with Liberty on "Diamond Eagle" social media; (b) promoting their previous affiliation with Liberty at their "Diamond Eagle" locations; (c) using the same telephone numbers that they used for their Liberty offices; (d) offering the same promotions at their "Diamond Eagle" locations that Liberty offers; (e) employing former Liberty franchise employees at their "Diamond

Eagle" locations, who are continuing to service Liberty customers; and (f) misappropriating Liberty's trade dress.

> a. Defendants are advertising their previous affiliation with Liberty on "Diamond Eagle" social media.

147. Defendants are advertising on social media that "Diamond Eagle" is the "same people" and the "same locations" as their former Liberty franchise offices.

148. On January 10, 2024, the "Diamond Eagle" Facebook page posted a message stating: "[C]ome back to your tax office" -- "Same People" -- "Same Location." Below is a screenshot of the post:



149. Defendants are also specifically advertising on social media that "Diamond Eagle" is formerly Liberty Tax Service.

150. On January 10, 2024, the "Diamond Eagle" Instagram page posted a message stating: "Diamond Eagle Taxes (Formally[3] Liberty Tax Service) is open

---

[3] The post contains a typo, where it states "formally" instead of "formerly."

and offering Refunds Advances" -- "[C]ome back to your tax office" -- "Same People" -- "Same Location." Below is a screenshot of the post:



151.   "Diamond Eagle" employees are also advertising on social media the company's previous affiliation with Liberty.

152.   On January 4, 2024, Lorraine Day, a Diamond Eagle employee, posted to a Facebook group for "Locals of Stroudsburg, PA and Surrounding Areas" that "Diamond Eagle" is in the "same location as the old liberty tax." Below is a screenshot of the January 4, 2024 post:



153.   Randy Page maintains two Linkedin profiles. One profile states that Randy Page is a Liberty Tax Service owner, and while the other profile states that Randy Page is the CEO of "Diamond Eagle":




b. Defendants are promoting their previous affiliation with Liberty at their "Diamond Eagle" locations.

154.   Defendants are promoting their previous affiliation with Liberty at their "Diamond Eagle" locations.

155.   When customers call the "Diamond Eagle" locations, they are told that "Diamond Eagle" has the "same owners," "same staff," and "same operation" as

Liberty. *See* Rico Hamilton Decl., ¶ 11. They are also told that if they were previous customers of the location, "Diamond Eagle would be able to access their Liberty tax files and records. *See id*., ¶ 12.

156.   When customers visit the "Diamond Eagle" locations, they are told: "Welcome to Diamond Eagle, formerly Liberty Tax." *See* Frank DeAndrea Decl., ¶ 22.

157.   When customers visit the "Diamond Eagle" locations, they also receive fliers that specifically state that "Diamond Eagle" is formerly Liberty Tax Service. *See* Frank DeAndrea Decl., ¶ 44, Ex. C.

158.   Liberty's logos are on computer screens of at least one "Diamond Eagle" employee, which are visible to customers, as depicted below:



*See* Frank DeAndrea Decl., ¶ 54, Ex. D.

c. Defendants are using the same telephone numbers that they used for their Liberty offices.

159.   Defendants are using the same telephone numbers for "Diamond Eagle" that they used for their former Liberty offices.

160.   The telephone number advertised on the exterior of the Route 940 Location is (570) 243-8860. *See* Frank DeAndrea Decl., ¶ 19, Ex. A. This is the same telephone number listed for the Route 940 Location on the "Diamond Eagle" website. *See* Paragraph 135, above. This telephone number was previously used for the Route 940 Location when it was a Liberty office.

161.   The telephone number advertised on the exterior of the Main Street Location is (570) 369-4264. *See* Frank DeAndrea Decl., ¶ 29, Ex. B. This is the same telephone number listed for the Main Street Location on the "Diamond Eagle" website. *See* Paragraph 135, above.

162.   The telephone number advertised on the exterior of the 9th Street Location is (570) 369-4461. *See* Frank DeAndrea Decl., ¶ 37, Ex. C. This is the same telephone number listed for the 9th Street Location on the "Diamond Eagle" website. *See* Paragraph 135, above.

163.   The telephone number advertised on the exterior of the Fox Run Lane Location is (570) 730-4460. *See* Frank DeAndrea Decl., ¶ 47, Ex. D. This is the same telephone number listed for the Fox Run Lane Location on the "Diamond Eagle"

website. *See* Paragraph 135, above. This telephone number was previously used for the Fox Run Lane Location when it was a Liberty office. *See* Paragraph 181, below.

164.    The telephone number advertised on the exterior of the Utica Avenue Location is (781) 941-0571. *See* Lemma Decl., ¶ 19, Ex. B. This is the same telephone number listed for the Utica Avenue Location on the "Diamond Eagle" website. *See* Paragraph 135, above. This telephone number was previously used for the Utica Avenue Location when it was a Liberty office. *See* Paragraph 181, below.

165.    The telephone number advertised on the exterior of the Flatbush Avenue Location is (347) 509-8900. *See* Lemma Decl., ¶ 13, Ex. A. This is the same telephone number listed for the Flatbush Avenue Location on the "Diamond Eagle" website. *See* Paragraph 135, above. This telephone number was previously used for the Flatbush Avenue Location when it was a Liberty office.

166.    These same telephone numbers are also advertised on "Diamond Eagle" business cards. *See* Frank DeAndrea Decl., Exs. A-D.

          d.    <u>Defendants are offering the same promotions at their "Diamond Eagle" locations that Liberty offers.</u>

167.    At each "Diamond Eagle" location, there are promotions for $50 referrals for tax customers. *See* https://www.diamondeaglellc.com/personal-tax ("'Send a Friend' - Receive $50 for each referral that files with us!"). *See also* Frank DeAndrea Decl., ¶ 21, Ex. A; Lemma Decl., ¶ 16, Ex. A. Liberty currently offers an

DocuSign Envelope ID: PBC3926C-1871-4581-A7B8-93A70F04BC8E

identical promotion. *See* https://www.libertytax.com/refer (last visited Feb. 5, 2024) ("Refer a friend and receive $50" and "Get paid $50 per referral").

168.   At each "Diamond Eagle" location, there are promotions for refund advance loans from $500 up to $7,000. *See* https://www.diamondeaglellc.com/ ("$500-$7,000 WITHIN 24 HOURS OR LESS!"). *See also* Frank DeAndrea Decl., ¶¶ 20, 30, 31, 38, 39, 40, 48, 50, Exs. A-D. Liberty currently offers a virtually identical promotion. *See* https://www.libertytax.com/easy-advance (last visited Feb. 5, 2024) ("Easy Advance – The fast way to get a tax refund loan from $500 to $6,250").

       e.  <u>Defendants are employing former Liberty franchise employees at their "Diamond Eagle" locations, and these employees are continuing to service Liberty customers.</u>

169.   Defendants hired several former Liberty franchise employees to work at their "Diamond Eagle" locations.

170.   Defendants hired Darlene Haese, who was a former office manager for Liberty. *See* Frank DeAndrea Decl., ¶¶ 51-54. Ms. Haese's Linkedin profile still states that she is an office manager at Liberty Tax. Attached hereto as <u>Exhibit 25</u> is a true and correct copy of Darlene Haese's Linkedin profile. Below are sample Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Haese:



171.    Defendants hired Ingrid Bowers, who was a former tax preparer for Liberty. *See* Frank DeAndrea Decl., ¶ 22. Below are sample Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Bowers:



172.    Defendants hired Ariel Boswell, who was a former tax preparer for Liberty. *See* Frank DeAndrea Decl., ¶ 42. Below are sample Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Boswell:




173.   Defendants hired Shari Kelly, who was a former tax preparer for Liberty. *See* Frank DeAndrea Decl., ¶ 33. Below are sample Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Kelly:




174.   Defendants hired Karla Matthie, who was a former tax preparer for Liberty. *See* Lemma Decl., ¶¶ 14-15. Ms. Matthie's Linkedin profile still states that she is a Lead Tax Preparer at Liberty Tax Service. Attached hereto as <u>Exhibit 26</u> is a true and correct copy of Karla Matthie's Linkedin profile. Below are sample

Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Matthie:




175.    Defendants hired Erica Nieves, who was a former office manager for Liberty. *See* Frank DeAndrea Decl., ¶¶ 24-26. Ms. Nieves's Linkedin profile still states that she is an office manager at Liberty Tax. Attached hereto as Exhibit 27 is a true and correct copy of Erica Nieves's Linkedin profile. Below are sample Google Reviews posted by customers of the Franchisee Defendants' former Liberty offices, which reference Ms. Nieves:




176.    Defendants hired Ayanna Freeman, who was a former tax preparer for Liberty. *See* Frank DeAndrea Decl., ¶ 41. Below is a sample Google Review posted

by a customer of the Franchisee Defendants' former Liberty offices, which references Ms. Freeman:



177.    Defendants hired Odetta Miller, who was a former tax preparer for Liberty. *See* Frank DeAndrea Decl., ¶ 32. Below is a sample Google Review posted by a customer of the Franchisee Defendants' former Liberty offices, which references Ms. Miller:



178.    Still worse, these former Liberty employees are continuing to service Liberty customers for "Diamond Eagle" at the former Liberty offices. For example, below are recent Google Reviews of "Diamond Eagle" that were posted by Liberty customers, which reference Ariel Boswell, Shari Kelly, Karla Matthie, Erica Nieves and Ingrid Bowers:



**Carmen Cruz**
Local Guide · 23 reviews · 5 photos

★★★★★ 6 days ago   NEW

I want to say that am very satisfied with my tax preparation done by Ariel. She's been doing my taxes for several years now.



**Christopher Burgess**
1 review

★★★★★ 5 days ago   NEW

This my second **year** dealing with MS Shari Kelly and she has been amazing and committed helping me with my taxes and hopefully with upcoming business loan and insurance.thank you Ms Shari have a bless **year**..

👍 Like      Share



**Iesha Santos**
Local Guide · 7 reviews

★★★★★ 4 weeks ago

Karla does my taxes every **year** and gets me the maximum refund . Best service to use when doing your taxes

👍 1       Share



**Jenn Herscap**
12 reviews

★★★★★ 4 weeks ago

Erica and her staff are amazing. They always have gotten me the most refund I was entitled to. Ingrid and Josefina and always pleasant and very knowledgeable.

👍 1       Share



**Joe Hernandez**
2 reviews

★★★★★ 2 weeks ago   NEW

I had a great experience at this location. They changed the name but the service was the same. My preparer Ingrid does her thing. Thanks

👍 1       Share

f.  Defendants are misappropriating Liberty's trade dress.

179.  Defendants are intentionally creating customer confusion by misappropriating Liberty's trade dress.

180.  Each "Diamond Eagle" location displays exterior signage and window dressing that use the same colors, employ a similar patriotic theme and bear a deceptively similar appearance to the trade dress and logos that Liberty used at those very same locations for many years.

181.  Below are photographs of several of the Franchisee Defendants' former Liberty locations both before and after they were converted to "Diamond Eagle" locations:

**The Flatbush Avenue Location:**

 

## The Utica Avenue Location:

 

## The Main Street Location:







**The Fox Run Lane Location:**

 

182.   As discussed below, Defendants' misappropriation of Liberty's trade dress also gives rise to liability for palming off under the Lanham Act. *See* Section H, below.

**F.    Termination of the Franchise Agreements.**

183.   On January 19, 2024, Liberty sent Karisma Page and Mr. Big Dreams a letter terminating the Franchise Agreements for territories PA019, PA030, PA358, PA021, PA353, NY153 and NY536, effective immediately, pursuant to Sections 8(b)(iv), 8(b)(viii), 8(b)(xi) and 10(a) of the Franchise Agreements, including, without limitation, violation of the in-term covenant not to compete. Attached hereto

as <u>Exhibit 28</u> is a true and correct copy of the termination letter sent to Karisma Page and Mr. Big Dreams.

184.   Liberty was also entitled to terminate the Franchise Agreements pursuant to, among others, Sections 8(b)(v) (failure to open for business in the territories by January 2), and 8(b)(xii) (committing three or more breaches of their agreements with Liberty).

185.   The termination letter reminded the Franchisee Defendants of their post-term obligations under their franchise agreements, including their obligations to:

a.   Pay to Liberty all monies owing;

b.   Transfer all telephone numbers used in relation to the Franchised Business to Liberty;

c.   Deliver to Liberty all paper and electronic copies of customer lists, tax returns, files, and records;

d.   Deliver to Liberty the Operations Manual and all updates;

e.   Upon Liberty's request, assign any interest in any lease, sublease or any other agreement related to the Franchised Business;

f.   Cease using and forever refrain from using and disclosing Liberty's Confidential Information and trade secrets; and

g.   Adhere to the provisions of the post-termination covenants not to compete and not to solicit in the Franchise Agreements.

*See id*.

186. In Section 9(d) of the Franchise Agreements, the Franchisee Defendants agreed that, immediately upon the termination of the Franchise Agreements, they would pay to Liberty all amounts owing. *See* Exs. 6, 10, 12, 16, 18, 20.

187. As of the termination date, the Franchisee Defendants owed a sum total of $207,553.98 in debt to Liberty, consisting of $195,075.25 in notes receivable and $12,478.73 in accounts receivable. A true and correct copy of the promissory note is attached hereto as Exhibit 29. A true and correct copy of the Debt Balance Summary is attached hereto as Exhibit 30.

188. Since the termination of the Franchise Agreements, the Franchisee Defendants have failed to pay any monies owed to Liberty, or to otherwise comply with the post-term restrictive covenants and obligations in the Franchise Agreements.

**G.    Post-Term Breaches of the Franchise Agreements**

      **1.    Breaches of the post-term covenant not to compete in the Franchise Agreements.**

189. After the termination of the Franchise Agreements on January 19, 2024, the Franchisee Defendants have breached, and continue to breach, the post-term covenants not to compete by operating their competing tax business at their former Liberty locations.

DocuSign Envelope ID: BBC3926C-4871-4581-A788-93A70F94BC8E

190.   Since the termination of the Franchise Agreements, the "Diamond Eagle" website has continued to advertise the following six Liberty franchise locations as "Diamond Eagle" locations: (1) the 9th Street Location; (2) the Main Street Location; (3) the Route 940 Location; (4) the Fox Run Lane Location; (5) the Utica Avenue Location; and (6) the Flatbush Avenue Location. *See* https://www.diamondeaglellc.com/contact-us (last visited Feb. 5, 2024).

191.   Since the termination of the Franchise Agreements, "Diamond Eagle" has continued to use Liberty's telephone numbers.

192.   Since the termination of the Franchise Agreements, the "Diamond Eagle" website continues to state that the company provides tax preparation services. *See* https://www.diamondeaglellc.com/ (last visited Feb. 5, 2024).

> **2.  Defendants are continuing to create customer confusion in order to capitalize on Liberty's goodwill at their former Liberty locations.**

193.   Since the termination of the Franchise Agreements, Defendants have continued to intentionally create customer confusion regarding whether the "Diamond Eagle" locations are affiliated with Liberty in order to capitalize on Liberty's goodwill at their former Liberty locations.

194.   Since the termination of the Franchise Agreements, Defendants have continued to advertise on social media that "Diamond Eagle" is the same people at the same location as Liberty Tax Service. For example, a reel posed to the "Diamond

Eagle" Facebook page on January 20, 2024 states that "Diamond Eagle" is the "SAME PEOPLE" and "SAME OFFICE." Below is a screenshot of the post:



195.   Since the termination of the Franchise Agreements, Defendants have continued to use the same telephone numbers for "Diamond Eagle" that they used for their former Liberty offices, and have continued to advertise these same telephone numbers on the "Diamond Eagle" website. *See* https://www.diamondeaglellc.com/contact-us (last visited Feb. 5, 2024).

196.   Since the termination of the Franchise Agreements, Defendants have continued to offer the same promotions as Liberty. For example, on January 22, 2022, the "Diamond Eagle" Facebook page posted a promotion stating "Refer a

friend and receive $50 cash when they file." Also for example, on January 21, 2022, the "Diamond Eagle" Facebook page posted a promotion advertising "a refund advance up to $7,000." Below are screenshots of these posts:

 

### 3. Breaches of the covenant not to solicit in the Franchise Agreements.

197. Since the termination of the Franchise Agreements, the Franchisee Defendants have breached, and continue to breach, the post-term covenant not to solicit by hiring Liberty franchise employees and soliciting Liberty customers served by their former Liberty franchise locations.

198. Since the termination of the Franchise Agreements, former Liberty franchise employees Darlene Haese, Ingrid Bowers, Ariel Boswell, Shari Kelly,

Karla Matthie, Erica Nieves, Ayanna Freeman and Odetta Miller continue to work for "Diamond Eagle." *See* Paragraphs 169-178, above. *See also* Frank DeAndrea Decl., ¶¶ 22, 24-26, 32-33, 41-42, 51-54; Lemma Decl., ¶¶ 14-15.

199.   Since the termination of the Franchise Agreements, these former Liberty franchise employees continue to service Liberty customers.

### 4.    Misappropriation of Liberty's confidential information and trade secrets.

200.   Since the termination of the Franchise Agreements, Defendants have failed to return Liberty's Confidential Information and trade secrets, including Liberty's Operations Manual and customer lists, tax returns, files and records.

201.   Instead, Defendants have used Liberty's Confidential Information and trade secrets to operate their competing tax business.

202.   By way of example only, when customers call the "Diamond Eagle" locations, they are told that if they were previously customers of the location, then "Diamond Eagle" employees would be able to access their Liberty tax files and records. *See* Rico Hamilton Decl., ¶ 12.

203.   Defendants are currently using, and will continue to use, Liberty's Confidential Information and trade secrets in the operation of their competing tax business in violation of the non-compete and non-solicitation covenants in the Franchise Agreements if they are not enjoined from doing so.

**H.    Palming Off the "Diamond Eagle" Locations as Liberty Locations**

204.    Defendants have palmed off "Diamond Eagle" services at the former Liberty franchise locations as Liberty services, including by: (i) operating "Diamond Eagle" offices at the same locations as their former Liberty offices; (ii) using trade dress and logos at those locations that confusingly mimic the trade dress and logos that Liberty used at those same locations; (iii) offering the same services as Liberty at those locations; (iv) offering the same promotions as Liberty at those locations; (v) employing the same personnel that Liberty employed at those locations; and (vi) intentionally creating customer confusion regarding whether the "Diamond Eagle" locations are affiliated with Liberty in order capitalize on Liberty's goodwill at those locations, including telling customers that "Diamond Eagle" is the "same people," "same location," "same owners," "same staff," and "same operation" as Liberty.

205.    As depicted in Paragraph 181 above. Each "Diamond Eagle" location displays exterior signage and window dressing that use the same colors, employ a similar patriotic theme and bear a deceptively similar appearance to the trade dress and logos ("Liberty Trade Dress and Logos") that Liberty used at those very same locations for many years.

206.    Liberty has used the Liberty Trade Dress and Logos continuously and extensively at its franchise locations throughout Pennsylvania, New York and the United States. For more than 20 years, Liberty has required that Liberty franchisees

nationwide adopt its trade dress, featuring a red, white and blue color scheme in conjunction with patriotic tax signage. Likewise, Liberty has used its trade dress in advertising nationwide for at least the past twenty years. Liberty's trade dress serves to identify Liberty as the source of high-quality original tax preparation services to the consuming public.

207.  As a result of Liberty's continuous and extensive use of the Liberty Trade Dress and Logos, the Liberty Trade Dress and Logos has acquired valuable goodwill and developed substantial secondary meaning to customers. Liberty has invested substantial time, effort and financial resources into developing and promoting its trade dress in connection with the promotion and delivery of its products and services. Liberty's trade dress has become an asset of substantial value as the public face of Liberty and as a symbol of Liberty's quality products and services, and its goodwill. Liberty's trade dress is inherently distinctive as applied to its products and services. Liberty's trade dress also has acquired secondary meaning through Liberty's long-term, widespread, and continuous use of its trade dress in commerce.

208.  "Diamond Eagle's" branding (displaying a red, white and blue color scheme with an eagle logo) is confusingly similar to Liberty's patriotic-themed Trade Dress and Logos and is intended to mimic and piggy-back on Liberty's Trade Dress and Logos. "Diamond Eagle's" branding is likely to cause, has caused, and

will continue to cause, confusion among customers as to the source, sponsorship, affiliation, or approval of the "Diamond Eagle" franchise business, and therefore constitutes trade dress infringement of Liberty's rights in the Liberty Trade Dress and Logos.

209. "Diamond Eagle" is compounding this customer confusion by advertising on social media that "Diamond Eagle" is the "same people" at the "same location" as Liberty Tax Service. *See* Paragraphs 147-152 and 194, above.

210. Defendants' false association with Liberty, false advertising, and trade dress infringement, as set forth above, has caused actual customer confusion, as customers have been deceived into thinking that "Diamond Eagle" is affiliated with Liberty. *See* Paragraphs 143-145, above.

## I.    Forgery of signatures on Lease Addendums.

211. In or around the beginning of 2022, the Franchisee Defendants requested a loan from Liberty to be used for the operation of their Liberty franchise locations.

212. In order to agree to the loan, Liberty required that the Franchisee Defendants execute lease addendums with the landlords for their Liberty franchise locations, which would permit Liberty to assume the leases and maintain the locations in the event of a termination.

213.   Attached hereto as Exhibits 31-36 are true and correct copies of the signed lease addendums provided by the Franchisee Defendants.

214.   On information and belief, the Franchisee Defendants forged the signatures of the landlords on multiple of the addendums because, when Liberty contacted the landlords regarding the addendums, the landlords did not have knowledge of them.

**J.     Irreparable Harm to Liberty.**

215.   Defendants' unlawful competition has irreparably harmed, and will continue to irreparably harm Liberty and its current and future franchisees, and can only be stopped through injunctive relief.

216.   As detailed above, Defendants are unlawfully competing by operating a competing tax business: (a) using the same locations as their former Liberty offices; (b) using the Liberty's Confidential Information; (c) using the same employees as their former Liberty offices; (d) offering the same promotions as their former Liberty offices; (e) using the same marketing techniques as their former Liberty offices; (f) using the same telephone numbers as their former Liberty offices; and (g) soliciting the same customers as their former Liberty offices.

217.   In essence, Defendants have simply changed the name under which they operate and have continued operating the same exact tax business without interruption in direct violation of the Franchise Agreements.

218.   Moreover, by and through their training and experience as Liberty franchisees, Defendants are now competing with knowledge of Liberty's marketing plans, the costs of operating a Liberty franchise, and the business strategies employed by Liberty franchisees. Defendants know exactly how Liberty's business system operates in terms of training, procedures, promotion, marketing, products, pricing, technology, and every other critical aspect of its business that gives Liberty franchisees an edge in the marketplace.

219.   There was a Liberty franchise office at all but one of Defendants' former Liberty locations for years before Defendants acquired them. During that time, Liberty invested significant time, money and resources into developing customer goodwill and loyalty, building a customer base, and creating a stable franchise system in the Stroudsburg, PA area and the Brooklyn, NY area.

220.   Defendants' unlawful competition has irreparably harmed, and continues to irreparably harm, Liberty through loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide tax preparation services and related services; loss of customers; loss of franchisee stability; loss of ability to sell other franchises; and loss of competitive advantage in the PA019, PA030, PA358, PA021, PA353, NY153 and NY536 territories (and throughout the Stroudsburg, PA area and the Brooklyn, NY area). None of this irreparable harm can be quantified or compensated for through monetary damages.

DocuSign Envelope ID: BBC3926C-4871-4581-A7B8-93A70F04BC8F

221.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a Liberty franchise location remains in a franchise territory for a number of years (and particularly when it remains at the same address for a number of years), Liberty develops goodwill and loyalty with customers in the area. Prospective Liberty franchisees will often seek franchise territories with locations that have remained in a franchise territory for a number of years (and particularly when they remain at the same addresses for a number of years) in order to capitalize on this goodwill and loyalty. For this reason, Liberty franchisees specifically acknowledge in the Franchise Agreement that Liberty loses customer goodwill when they breach the covenants not to compete. *See* Exs. 6, 10, 12, 16, 18, 20, at § 10(c).

222.    When the Franchisee Defendants acquired their former franchise locations, all but one location had already been Liberty offices for years. The Franchisee Defendants capitalized on the customer goodwill and loyalty that Liberty developed in these territories and at these locations when they acquired and operated their Liberty offices. Defendants are now depriving Liberty of this goodwill and loyalty by operating a competing business at their former Liberty franchise locations.

223.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, Liberty customers are much more likely to return to a tax office in the same territory and at the same address that they previously

DocuSign Envelope ID: PBC3926C-4871-4581-A7B8-93A70FP4BC8F

visited. For this reason, Liberty's Franchise Agreements give Liberty the right to require that a franchisee assign any lease(s) for their Liberty franchise business upon the termination of the Franchise Agreement and, when possible, Liberty encourages new Liberty franchisees to continue operating at an existing Liberty location if one exists in their franchise territory. When a competing tax business operates at a Liberty franchise location, there is a significant threat of a permanent loss of customers at that location and in the franchise territory. Once a Liberty customer is lost to a competitor, it is very difficult to win back the customer.

224.    Because Defendants are operating their competing tax business in their former Liberty territories and at their former Liberty locations, it very likely that they will provide tax services to Liberty customers returning to those locations—and in fact, there is evidence that Defendants have already done so. *See* Paragraphs 122 and 178, above (discussing Marjorie Page and other employees servicing Liberty customers). If their unlawful operation of a competing tax business at their former Liberty locations is allowed to continue, it will undoubtedly result in permanent loss of customers for Liberty.

225.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a former Liberty franchisee hires former Liberty employees to unlawfully compete in their former franchise territory

following termination of their Franchise Agreement, it creates customer confusion regarding the competing location's affiliation with Liberty.

226.   Because Defendants hired former Liberty employees for their competing tax business, there will likely be customer confusion regarding their competing tax business's affiliation with Liberty. In fact, there is already evidence that this has created customer confusion based on multiple online reviews by customers who believed that the "Diamond Eagle" locations they visited were Liberty Tax offices. *See* Paragraph 143-145, above.

227.   Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a former Liberty franchisee unlawfully operates a competing tax business in their former franchise territory following termination of their Franchise Agreement, it reduces the value of the franchise territory and makes it significantly more difficult for Liberty to attract a replacement franchisee for the franchise territory. If Liberty cannot find a replacement franchisee, it typically loses most of its customers in the franchise territory. Even when Liberty can find a replacement franchisee for the territory, Liberty still typically suffers a significant loss of customers because Liberty loses its competitive advantage in the territory.

228.   Because Defendants are operating their competing tax business at their former Liberty franchise locations, it is significantly more difficult for Liberty to

attract replacement franchisees for the PA019, PA030, PA358, PA021, PA353, NY153 and NY536 franchise territories. If Liberty cannot find replacement franchisees, it will likely lose most of its customers in the PA019, PA030, PA358, PA021, PA353, NY153 and NY536 franchise territories. Even if Liberty can find replacement franchisees, Liberty will likely suffer a significant loss of customers because Liberty will lose its competitive advantage in the PA019, PA030, PA358, PA021, PA353, NY153 and NY536 territories.

229.   Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, Liberty franchisees, including those in the Stroudsburg, PA area and the Brooklyn, NY area, communicate with each other and/or monitor the actions of other current and former Liberty franchisees. If Liberty franchisees observe that other franchisees are able to "flip signs" and operate competing tax business within their franchise territories, it can create a "domino effect" and cause other franchisees to also "flip signs" and begin competing.

230.   If Defendants' unlawful operation of a competing tax business at their former Liberty franchise locations is allowed to continue, it will likely create a "domino effect" and cause other current and former Liberty franchisees in the Stroudsburg, PA area and the Brooklyn, NY area to "flip signs" and begin operating competing tax businesses within their franchise territories, which will significantly reduce the value of a Liberty franchise in the Stroudsburg, PA area and the Brooklyn,

NY area, and threaten the stability of Liberty's entire franchise system in the Stroudsburg, PA area and the Brooklyn, NY area.

231.   It is vitally important to Liberty's franchise system (in the Stroudsburg, PA area, the Brooklyn, NY area, and throughout the country), and Liberty's franchisees (in the Stroudsburg, PA area, the Brooklyn, NY area, and throughout the country), that the Court enforce the post-term restrictive covenants and obligations in the Franchise Agreements, which expressly prohibit Defendants from operating their competing tax business using Liberty's Confidential Information.

232.   Liberty has no means of enforcing the post-term restrictive covenants and obligations in the Franchise Agreements—and remedying the irreparably harm that Liberty has suffered, and continues to suffer—other than to seek injunctive relief from this Court.

### K.    Karisma Page's, Randy Page's and Marjorie Page's other businesses.

233.   In addition to their competing tax preparation business, Karima Page, Randy Page and Marjorie Page derive income from other businesses, including as follows:

234.   Karisma Page is a life coach, speaker, trainer, teacher, author, and founder/CEO of Erin Resilience LLC. *See* https://www.erinresilience.com/ (last visited Feb. 2, 2024).

235.   Randy Page and Marjorie Page are owners of a property management company, Wakanda Properties LLC. *See* Paragraph 132, above. *See also* https://www.wakandapropllc.com/ (last visited Feb. 5, 2024).

<u>**COUNT I**</u>
***Breach of the Franchise Agreements***
***Against Karisma Page, Mr. Big Dreams, Randy Page and Pageco***
***(Equitable Claim)***

236.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

237.   The Franchise Agreements are valid and enforceable contracts.

238.   Liberty has performed every obligation and condition required under the Franchise Agreements.

239.   Pursuant to Section 10(a) of the Franchise Agreements, the Franchisee Defendants agreed to an in-term covenant not to compete.

240.   Karisma Page and Mr. Big Dreams materially breached Section 10(a) of the Franchise Agreements by operating a competing tax business at the same locations as their former Liberty franchise locations during the terms of the Franchisee Agreements.

241.   Liberty terminated the Franchise Agreements on January 19, 2024.

242.   In the Franchise Agreements (and the Assignment and Amendment to the Franchise Agreements dated February 13, 2022), the Franchisee Defendants agreed to be bound by certain post-term covenants and obligations.

243.   Pursuant to Sections 10(b) and 10(d) of the Franchise Agreements, the Franchisee Defendants agreed to post-term covenants not to compete and not to solicit.

244.   Pursuant to Section 10(e) of the Franchise Agreements, the Franchisee Defendants agreed to use good faith efforts to ensure that after termination of the Franchise Agreements, no person or entity would offer income tax preparation at their former Liberty franchise locations.

245.   The Franchisee Defendants have materially breached, and continue to materially breach, Sections 10(b), 10(d) and 10(e) of the Franchise Agreements by operating a competing tax business at their former Liberty franchise locations.

246.   Pursuant to Section 9 of the Franchise Agreements, the Franchisee Defendants agreed to post-termination obligations, including (among others) the obligations to: (1) transfer to Liberty all phone numbers used in connection with the operation of their former Liberty franchise locations; (2) assign to Liberty (if Liberty elects) their interests in any leases for their former Liberty franchise locations; (3) deliver to Liberty all customer lists, tax returns, files, and records; (4) return Liberty's confidential Operations Manual; (5) forever refrain from using Liberty's Confidential Information; and (6) adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants.

247.    The Franchisee Defendants have materially breached Section 9 of the Franchise Agreements by, among other breaches: (1) failing to transfer to Liberty all phone numbers used in connection with the operation of their former Liberty franchise locations; (2) failing to assign to Liberty their interests in any leases for their former Liberty franchise locations; (3) failing to deliver to Liberty all customer lists, tax returns, files, and records; (4) failing to return Liberty's confidential Operations Manual; (5) using Liberty's Confidential Information to establish and operate a competing tax business; and (6) failing to adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants by operating a competing tax business at their former Liberty franchise locations.

248.    Pursuant to Section 12(a) of the Franchise Agreements, the Franchisee Defendants agreed not to use any of Liberty's Confidential Information for their personal benefit, and not to use or disclose Liberty's Confidential Information in the development or operation of any business substantially similar to their Liberty franchise business.

249.    Pursuant to Section 12(c) of the Franchise Agreements, the Franchisee Defendants agreed to refrain from using Liberty's Confidential Information for any purpose other than the operation of their Liberty franchise business, and maintain absolute confidentiality of Liberty's Confidential Information during and after the term of the Franchise Agreements.

250.   The Franchisee Defendants materially breached Section 12 of the Franchise Agreements by using Liberty's Confidential Information and trade secrets in the operation of their competing tax business, both before and after the termination of the Franchise Agreements. *See* Rico Hamilton Decl., ¶¶ 12-13.

251.   As a direct and proximate result of these material breaches, Liberty has incurred and will continue to incur substantial losses, fees, and expense for which the Franchisee Defendants are liable.

252.   As a result of the Franchisee Defendants' past, present, and potential breaches, Liberty has suffered, and will continue to suffer, actual, substantial, and irreparable damages, including but not limited to:

    a.    Loss of customer goodwill and loyalty;

    b.    Loss of business opportunities and relationships to provide tax preparation services and related services;

    c.    Loss of customers;

    d.    Loss of profits;

    e.    Loss of franchisee stability;

    f.    Loss of ability to sell other franchises;

    g.    Loss of value in confidential business information;

    h.    Loss of competitive advantage in each of the Franchise Territories;

    i.    Attorneys' fees; and

j.     Cost of this action.

253.   Liberty has been and will be irreparably harmed by the Franchisee Defendants' actions, and monetary damages are an insufficient remedy in that it can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by the Franchisee Defendants' ongoing violations of the Franchise Agreements.

254.   The Franchisee Defendants expressly acknowledged in Section 10(c) of the Franchise Agreements that "any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm."

255.   Pursuant to Section 27 of the Franchise Agreements, Karisma Page and Randy Page agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty."

256.   Because Karisma Page and Randy Page also participated individually in the breaches of the Franchise Agreement by, among other things, operating a competing tax business, misappropriating Liberty's Confidential Information, and

misappropriating Liberty's goodwill, they are personally liable for all of the Franchisee Defendants' breaches of the Franchise Agreements.

257.   Unless their wrongful conduct is enjoined, the Franchisee Defendants will continue to breach the non-competition and non-solicitation covenants, and continue to misappropriate Liberty's Confidential Information.

**COUNT II**
***Breach of the Franchise Agreements***
***Against Karisma Page, Mr. Big Dreams, Randy Page and Pageco***
***(Monetary Claim)***

258.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

259.   The Franchise Agreements are valid and enforceable contracts.

260.   Liberty has performed every obligation and condition required under the Franchise Agreements.

261.   Pursuant to Section 9(d) of the Franchise Agreements, the Franchisee Defendants agreed that, immediately upon termination of the Franchise Agreements, they would pay to Liberty all amounts owing to Liberty.

262.   As of the termination date, the Franchisee Defendants owed a sum total of $207,553.98 in debt to Liberty, consisting of $195,075.25 in notes receivable and $12,478.73 in accounts receivable.

263.   The Franchisees Defendants have failed to pay any monies owed to Liberty since the termination of the Franchise Agreements.

DocuSign Envelope ID: BBC3926C-1871-4581-A7B8-93A70F84BC8E

264.   The Franchisee Defendants have also defaulted under the promissory note, which states that the following constitute an event of default: "(a) any default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note; . . . or (h) any termination, sale or other action whereby any Obligor ceases to hold ownership rights to the business to which this Note relates."

265.   Liberty is entitled to exercise its rights under Section 16 of the Franchise Agreements, pursuant to which the Franchisee Defendants granted Liberty "a security interest in all of the assets of your Franchised Business, including inventory, accounts, supplies, contracts, and proceeds and products of all those assets."

266.   Additionally, as detailed above, pursuant to Section 10 of the Franchise Agreements, the Franchisee Defendants agreed to the in-term and post-term non-competition and non-solicitation covenants.

267.   The Franchisee Defendants have been, and currently are, competing against Liberty and soliciting customers in violation of the non-compete and non-solicit covenants in the Franchise Agreements by operating a competing tax business at their former Liberty franchise locations.

268.   The Franchisee Defendants have, and will continue, to compete against Liberty and solicit Liberty's customers using Liberty's Confidential Information and

trade secrets, which Defendants failed to return to Liberty in violation of Sections 9(g) 9(h), and 9(i) of the Franchise Agreements.

269. Each of the Franchisee Defendants' foregoing breaches constitute a material breach of the Franchise Agreements.

270. As a direct and proximate result of the Franchisee Defendants' breaches of Sections 9 and 10 of the Franchise Agreements, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendants are liable, including but not limited to, compensatory damages, consequential damages, and disgorgement of profits in an amount exceeding $75,000.

271. Pursuant to Section 27 of the Franchise Agreements, Karisma Page and Randy Page agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty."

272. Because Karisma Page and Randy Page also participated individually in the breaches of the Franchise Agreement by, among other things, operating a competing tax business, misappropriating Liberty's Confidential Information, and misappropriating Liberty's goodwill, Karisma Page and Randy Page are personally liable for all of the Franchisee Defendants' breaches of the Franchise Agreements.

## COUNT III
### *Common Law Conversion*
### *Against All Defendants*

273.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

274.   Liberty owns and has the right to possess the following property by virtue of the Franchise Agreements:

   a.   Any original and all copies, including electronic and cloud based copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of their Liberty franchise business;

   b.   Any original and all copies, including electronic and cloud based copies and media, containing, customer tax returns, files, and records; and

   c.   All copies of the Operations Manual and any updates.

275.   Defendants were authorized to use and possess the aforementioned property while operating the Franchisee Defendants' former Liberty franchise business pursuant to the Franchise Agreements.

276.   Pursuant to Section 9 of the Franchise Agreements, upon termination of the Franchise Agreements, the Franchisee Defendants were required to immediately transfer and deliver all of the aforementioned property to Liberty.

277.   In the termination letter, Liberty reminded the Franchisee Defendants of their obligations under the Franchise Agreements, including their obligations (among others) to: deliver to Liberty all paper and electronic copies of customer lists,

tax returns, files, and records; and deliver to Liberty the Operations Manual and all updates.

278.    As of the date of this filing, Defendants still possess, and have not returned, any of the aforementioned property to Liberty.

279.    As such, Defendants are intentionally interfering with Liberty's use and enjoyment of its property.

280.    Defendants have converted Liberty's property for their financial gain through their operation of a competing tax business and their solicitation of Liberty's customers.

281.    Defendants' interference with Liberty's property by virtue of not transferring or delivering it to Liberty has deprived Liberty of its possession and use of the aforementioned property.

282.    As a direct and proximate result of Defendants' conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages, for which Defendants are liable, until the aforementioned property is returned to Liberty.

<u>**COUNT IV**</u>
***Violation of Defend Trade Secrets Act of 2016***
***Against All Defendants***

283.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

284. The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

285. Liberty owns numerous trade secrets, including but not limited to, its Operations Manuals, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, and customer information.

286. Each of Liberty's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

287. Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to Liberty franchisees in the operation of a Liberty franchise pursuant to a Liberty franchise agreement.

288. Franchisees are licensed to use the trade secrets only pursuant to the franchise agreements in the operation of a Liberty franchise to provide paid tax preparation and related services for customers.

289. Pursuant to the Franchise Agreements, Liberty disclosed its trade secrets to the Franchisee Defendants for the sole purpose of operating their Liberty franchise.

290.    Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

291.    The Franchise Agreements explicitly provide for the protection of the above-referenced trade secrets, including requiring the return of all originals and copies of the confidential Operations Manual, and customer lists, files and records to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreements; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreements.

292.    Pursuant to Sections 9 and 12 of the Franchise Agreements, Defendants agreed that upon termination of the Franchise Agreements, they would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and that they would immediately return all Confidential Information, including trade secrets, upon termination.

293.    Defendants have failed to return Liberty's Confidential Information and trade secrets, including, but not limited to, the Operations Manual and all records from their former Liberty franchise locations.

DocuSign Envelope ID: BBC3926C-4871-4581-A7B8-23A70F94BC8E

294.  Defendants used and are using Liberty's Confidential Information and trade secrets during and after the termination of the Franchise Agreements in connection with tax preparation done to divert revenues from Liberty, and Liberty has not and would not consent to or authorize such use.

295.  Defendants, individually or jointly, intentionally and without Liberty's permission or authorization, misappropriated Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

296.  As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

297.  Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use.

298.  Defendants' conduct in misappropriating Liberty's trade secrets was, and continues to be, willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

299.   Liberty further is entitled to a civil seizure remedy under the DTSA, and requests that the Court enter an order providing for the seizure of Liberty's property, including Liberty's Operations Manual and any updates thereto, and Liberty's customer lists, records, files and information.

## COUNT V
### *Direct and Contributory False Association, False Advertising, Trade Dress Infringement and Violation of the Lanham Act, 15 U.S.C. § 1125(a) Against All Defendants*

300.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

301.   Liberty has used a distinctive designation, including the Liberty Trade Dress and Logos, in interstate commerce in connection with the delivery of tax preparation services.

302.   Liberty has invested substantial time, effort and financial resources developing and promoting its trade dress in connection with the promotion and delivery of its products and services.

303.   Liberty's trade dress has become an asset of substantial value as the public face of Liberty and as a symbol of Liberty's quality products and services and its goodwill.

304.   Liberty's trade dress is non-functional.

305.   Liberty's trade dress is inherently distinctive as applied to its products and services. In the alternative, Liberty's trade dress has acquired secondary meaning through Liberty's long-term, widespread, and continuous use of its trade dress in commerce.

306.   Liberty has over 2,000 franchise locations nationwide, including many locations throughout Pennsylvania and New York.

307.   Consumers identify Liberty as the source of the tax preparation services based on the use of the Liberty Trade Dress and Logos.

308.   Defendants control, "Diamond Eagle's" trade dress, logos and advertising, and therefore are liable for "Diamond Eagle's" false association, false advertising, and trade dress infringement.

309.   Defendants have participated in, encouraged, and benefitted from "Diamond Eagle's" false association, false advertising and trade dress infringement, and therefore are guilty of contributory infringement and jointly liable for Liberty's damages.

310.   Defendants have directed, controlled, ratified, participated in and benefitted from the infringing activity and therefore is personally liable for Liberty's damages.

311.   Defendants have used a combination of words, symbols, logos and/or trade dress that mimics the Liberty Trade Dress and Logos at former Liberty franchise locations.

312.   Defendants' false association, false advertising and trade dress infringement is likely to cause, and has caused, confusion among customers as to the source, sponsorship, affiliation or approval of "Diamond Eagle," and therefore constitutes trade dress infringement of Liberty's rights in the Liberty Trade Dress and Logos.

313.   Both before and after the termination of the Franchise Agreements, Defendants have promoted "Diamond Eagle" on social media as the "same people" and the "same locations" as their former Liberty franchise offices.

314.   Defendants' false association, false advertising, and use of the Liberty Trade Dress and Logos in order to palm off their franchise locations as Liberty locations – as more specifically described in above – has damaged Liberty, and has caused, and will continue to cause, immediate and irreparable harm to Liberty.

315.   As a direct and proximate result of Defendants' trade dress infringement, false association and palming off of their "Diamond Eagle" locations as Liberty locations, Liberty has incurred and will continue to incur substantial losses, fees, and expense for which Defendants are liable in an amount to be proven

at trial, including, but not limited to, compensatory damages and disgorgement of profits.

## COUNT VI
### *Tortious Interference*
### *Against Randy Page and Pageco*

316.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

317.   Karisma Page/Mr. Big Dreams's Franchise Agreements are valid and enforceable contracts with Liberty.

318.   Liberty has legal rights under Karisma Page/Mr. Big Dreams's Franchise Agreements as detailed above.

319.   Randy Page and Pageco have knowledge of Karisma Page/Mr. Big Dreams's Franchise Agreements (and the business relationship between Liberty and Karisma Page/Mr. Big Dreams) based on Randy Page's position as a former Liberty franchisee, and as husband to Karisma Page.

320.   Randy Page and Pageco are not parties (i.e., strangers) to Karisma Page/Mr. Big Dreams's Franchise Agreements.

321.   Randy Page and Pageco have no direct ownership interest in Karisma Page/Mr. Big Dreams's former Liberty franchise business, and they have no direct beneficial, financial or economic interest in, or control, over the contractual relationship between Liberty and Karisma Page/Mr. Big Dreams.

322.   Randy Page and Pageco directly interfered with Karisma Page/Mr. Big Dreams's Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with Karisma Page and Mr. Big Dreams to breach their Franchise Agreements by opening and operating a competing tax business known as "Diamond Eagle" at Karisma Page/Mr. Big Dreams's former Liberty franchise locations in direct violation of the non-compete covenants in their Franchise Agreements.

323.   Randy Page and Pageco directly interfered with Karisma Page/Mr. Big Dreams's Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with Karisma Page and Mr. Big Dreams to solicit Liberty customers and employees for their competing tax business in direct violation of the non-solicitation covenant in their Franchise Agreements.

324.   Randy Page and Pageco directly interfered with Karisma Page/Mr. Big Dreams's Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with Karisma Page and Mr. Big Dreams to fail to return Liberty's Confidential Information and trade secrets, and instead using them to operate a competing tax business in direct violation of their Franchise Agreements. *See* Rico Hamilton Decl., ¶¶ 12-13.

325.    Randy Page is the Chief Executive Officer of "Diamond Eagle," and Defendants converted Karisma Page/Mr. Big Dreams's Liberty offices into "Diamond Eagle" locations. *See* Frank DeAndrea Decl.; Lemma Decl.

326.    Corporate filings submitted to the Pennsylvania Department of State identify Randy Page as the organizer of Diamond Eagle Agency LLC, and as an agent to receive mail for Diamond Eagle Taxes Inc. *See* Exs. 4-5.

327.    Randy Page and Pageco's tortious interference with Karisma Page/Mr. Big Dreams's Franchise Agreements was intentional, unjustified and without legal basis.

328.    Randy Page and Pageco acted purposely, with malice, and with the intent to injure Liberty.

329.    Randy Page and Pageco were not acting within the course and scope of their employment for, or as agents of, any of Karisma Page or Mr. Big Dreams when they tortiously interfered with Karisma Page/Mr. Big Dreams's Franchise Agreements.

330.    Randy Page and Pageco's tortious interference with Karisma Page/Mr. Big Dreams's Franchise Agreements directly and proximately caused damage to Liberty by, *inter alia*, depriving Liberty of royalties and fees under their Franchise Agreements for tax returns filed through their competing tax business in violation of their Franchise Agreements.

331. Randy Page and Pageco's tortious interference with Karisma Page/Mr. Big Dreams's Franchise Agreements directly and proximately caused Liberty to suffer, and will continue to cause Liberty to suffer, actual, substantial, and irreparable damages, including but not limited to:

    a.  Loss of customer goodwill and loyalty;

    b.  Loss of business opportunities and relationships to provide tax preparation services and related services;

    c.  Loss of customers;

    d.  Loss of profits;

    e.  Loss of franchisee stability;

    f.  Loss of ability to sell other franchises;

    g.  Loss of value in confidential business information;

    h.  Loss of competitive advantage in each of the Franchise Territories;

    i.  Attorneys' fees; and

    j.  Cost of this action.

## COUNT VII
### *Tortious Interference*
### *Against Marjorie Page*

332. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

DocuSign Envelope ID: BBC3926C-1871-4581-A7B8-93A70F94BC8E

333.  The Franchise Agreements are valid and enforceable contracts with Liberty.

334.  Liberty has legal rights under the Franchise Agreements as detailed above.

335.  Marjorie Page has knowledge of the Franchise Agreements (and the business relationship between Liberty and the Franchisee Defendants) as Randy Page's sister and Karisma Page's sister-in-law.

336.  Marjorie Page is not a party (i.e., a stranger) to the Franchise Agreements between Liberty and the Franchisee Defendants.

337.  Marjorie Page has no direct ownership interest in the Franchisee Defendants' former Liberty franchise business, and she has no direct beneficial, financial or economic interest in, or control, over the contractual relationship between Liberty and the Franchisee Defendants.

338.  Marjorie Page directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with the Franchisee Defendants to breach their Franchise Agreements by opening and operating a competing tax business known as "Diamond Eagle" at the Franchisee Defendants' former Liberty franchise locations in direct violation of the non-compete covenants in the Franchise Agreements.

339.   Marjorie Page directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with the Franchisee Defendants to solicit Liberty customers and employees for their competing tax business in direct violation of the non-solicitation covenant in the Franchise Agreements.

340.   Marjorie Page directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with the Franchisee Defendants to fail to return Liberty's Confidential Information and trade secrets, and instead using them to operate a competing tax business in direct violation of the Franchise Agreements. *See* Rico Hamilton Decl., ¶¶ 12-13.

341.   The Articles of Incorporation for Diamond Eagle Taxes Inc. show that Marjorie Page is the incorporator of Diamond Eagle Taxes Inc. *See* Ex. 5.

342.   Publicly available information on the IRS website shows that Marjorie Page applied for three EFINs on July 13, 2023 and three additional EFINs on November 2, 2023 on behalf of "Diamond Eagle."

343.   Marjorie Page is preparing taxes for former Liberty customers at the "Diamond Eagle" offices.

344.   Marjorie Page's tortious interference with the Franchise Agreements was intentional, unjustified and without legal basis.

345. Marjorie Page acted purposely, with malice, and with the intent to injure Liberty.

346. Marjorie Page was not acting within the course and scope of her employment for, or as agents of, any of the Franchisee Defendants when she tortiously interfered with the Franchise Agreements.

347. Marjorie Page's tortious interference with the Franchise Agreements directly and proximately caused damage to Liberty by, *inter alia*, depriving Liberty of royalties and fees under their Franchise Agreements for tax returns filed through their competing tax business in violation of their Franchise Agreements.

348. Marjorie Page's tortious interference with the Franchise Agreements directly and proximately caused Liberty to suffer, and will continue to cause Liberty to suffer, actual, substantial, and irreparable damages, including but not limited to:

    a.    Loss of customer goodwill and loyalty;

    b.    Loss of business opportunities and relationships to provide tax preparation services and related services;

    c.    Loss of customers;

    d.    Loss of profits;

    e.    Loss of franchisee stability;

    f.    Loss of ability to sell other franchises;

    g.    Loss of value in confidential business information;

     h.    Loss of competitive advantage in each of the Franchise Territories;

     i.    Attorneys' fees; and

     j.    Cost of this action.

## <u>COUNT VIII</u>
### *Conspiracy to Tortiously Interfere*
### *Against All Defendants*

349.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

350.   The Franchise Agreements are valid and enforceable contracts between Liberty and the Franchisee Defendants.

351.   Liberty has legal rights under the Franchise Agreements as detailed above.

352.   Randy Page and Pageco are not parties (i.e., strangers) to Karisma Page/Mr. Big Dreams's Franchise Agreements.

353.   Randy Page and Pageco have no direct ownership interest in Karisma Page/Mr. Big Dreams's former Liberty franchise business, and they have no direct beneficial, financial or economic interest in, or control, over the contractual relationship between Liberty and Karisma Page/Mr. Big Dreams

354.   Marjorie Page is not a party (i.e., a stranger) to the Franchise Agreements between Liberty and the Franchisee Defendants.

355.    Marjorie Page has no ownership interest in the Franchisee Defendants'
former Liberty franchise business, and she has no direct beneficial, financial or
economic interest in, or control, over the contractual relationship between Liberty
and the Franchisee Defendants.

356.    Defendants agreed and conspired to unlawfully breach the Franchise
Agreements by taking unlawful, overt and concrete actions in furtherance of the
conspiracy beyond simple preparation, including the following acts:

    a.    Defendants have opened and operated a competing tax business
known as "Diamond Eagle" at the Franchisee Defendants'
former Liberty franchise offices in direct violation of the non-
compete covenants in the Franchise Agreements, and Defendants
are each involved in "Diamond Eagle," including as follows:

        i.    Randy Page is the CEO of "Diamond Eagle," the organizer
of Diamond Eagle Agency LLC, and an agent to receive
mail for Diamond Eagle Taxes Inc. *See* Exs. 4-5.

        ii.    Karisma Page owned and operated the Liberty franchise
offices that were converted to "Diamond Eagle" locations.
Karisma Page is an agent to receive mail for Diamond
Eagle Agency LLC. *See* Ex. 4. Karisma Page frequently
promotes "Diamond Eagle" on social media.

        iii.    Marjorie Page is the incorporator of Diamond Eagle Taxes
Inc. *See* Ex. 5. Marjorie Page is preparing taxes for former
Liberty customers at the "Diamond Eagle" offices.
Marjorie Page applied for six EFINs from the IRS on
behalf of "Diamond Eagle" in which she listed as the
business addresses: (1) the registered office address for
Mr. Big Dreams and Diamond Eagle Agency LLC; (2) the
registered address for Pageco; and (3) addresses of several
properties owned by Wakanda Properties, LLC, a

company owned/operated by Randy Page and Marjorie Page.

b.   Defendants solicited Liberty customers and employees for their competing tax business in direct violation of the non-solicitation covenant in the Franchise Agreements.

c.   Defendants failed to return Liberty's Confidential Information and trade secrets, and instead used them to operate a competing tax business in direct violation of the Franchise Agreements. *See* Rico Hamilton Decl., ¶¶ 12-13.

357.   Through these concerted actions Defendants conspired for their own benefit, and willfully and maliciously undertook to injure Liberty.

358.   Defendants knew and intended that by conspiring together to breach the Franchise Agreements by opening an operating a competing tax business at the same offices as former Liberty franchise locations, they would give themselves a competitive advantage over Liberty.

359.   Defendants' conspiracy to tortiously interfere with the Franchise Agreements directly and proximately caused damage to Liberty by, *inter alia*, depriving Liberty of royalties and fees under the Franchise Agreements for tax returns filed through their competing tax business in violation of the Franchise Agreements.

360.   Defendants' conspiracy to tortiously interfere with the Franchise Agreements directly and proximately caused Liberty to suffer, and will continue to

cause Liberty to suffer, actual, substantial, and irreparable damages, including but not limited to:

    a.    Loss of customer goodwill and loyalty;

    b.    Loss of business opportunities and relationships to provide tax preparation services and related services;

    c.    Loss of customers;

    d.    Loss of profits;

    e.    Loss of franchisee stability;

    f.    Loss of ability to sell other franchises;

    g.    Loss of value in confidential business information;

    h.    Loss of competitive advantage in each of the Franchise Territories;

    i.    Attorneys' fees; and

    j.    Cost of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1.    For the following preliminary and permanent injunctive relief:

    A.    Enjoin Karisma Page, Mr. Big Dreams Inc., Randy Page, Pageco Inc., and all those acting by, through or in concert with them (including Diamond Eagle Agency LLC, Diamond Eagle Taxes Inc., Diamond Eagle LLC and Marjorie Page), from directly or indirectly, for a fee or charge, preparing or electronically filing income tax returns, or offering Financial Products (as defined in the Franchise Agreements), within the Territories (as defined in

the Franchise Agreements) or within twenty-five (25) miles of the boundaries of the Territories, for two years following the entry of any injunction;

B.    Enjoin Karisma Page, Mr. Big Dreams Inc., Randy Page, Pageco Inc., and all those acting by, through or in concert with them (including Diamond Eagle Agency LLC, Diamond Eagle Taxes Inc., Diamond Eagle LLC and Marjorie Page), from directly or indirectly soliciting any person or entity served by any of their prior Liberty offices within the last twelve (12) months that they were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products (as defined in the Franchise Agreements) for two years following the entry of any injunction;

C.    Enjoin Defendants from using or disclosing any of Liberty's Confidential Information (as defined in Section 12 of the Franchise Agreements), including without limitation, methods of operations, customer information, and marketing information;

D.    Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of their former Liberty franchise business;

E.    Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records;

F.    Order Defendants to deliver to Liberty all copies of the confidential Operations Manual and any updates thereto;

G.    Order Defendants to transfer to Liberty all telephone numbers, listings and advertisements used in relation to their former Liberty franchise business;

DocuSign Envelope ID: BBC3926C-1871-4581-A7B9-93A70F94BC9E

H.    Order Defendants to assign to Liberty the leases for the 9th Street Location, the Route 940 Location, and the Fox Run Lane Location; and

I.    Enjoin Randy Page, Pageco Inc., and Marjorie Page (and the entities through which they operate "Diamond Eagle," including Diamond Eagle Agency LLC, Diamond Eagle Taxes Inc., Diamond Eagle LLC) from tortiously interfering with the Franchise Agreements by operating a competing tax preparation in violation of the restrictive covenants in the Franchise Agreements, including from any of their former Liberty franchise locations.

2.    For an accounting of Defendants' revenues and profits for all tax return preparation and electronic filing at their seven former Liberty franchise locations identified herein since January 1, 2023;

3.    For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

4.    For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

5.    For pre- and post-judgment interest; and

6.    For such other relief as the Court deems just and proper.

DocuSign Envelope ID: BBC3926C-1871-4581-A7B9-93A70F94BC9E

Dated: February 9, 2024

Respectfully submitted,

*/s/ Peter G. Siachos*
Peter G. Siachos, Esq.
(PA Bar. No. 318250)
GORDON REES SCULLY MANSUKHANI, LLP
707 Grant Street, Suite 3800
Pittsburgh, PA 15219
T: (973) 549-2532
*psiachos@grsm.com*

James Messenger, Esq.
*Pro Hac Vice Motion forthcoming*
GORDON REES SCULLY MANSUKHANI, LLP
28 State Street, 10th Floor
Boston, MA 02109
T: (857) 263-2000
*jmessenger@grsm.com*

## <u>VERIFICATION</u>

CLIFFORD BIRNBAUM does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on <u>    February 9    </u>, 2024.

DocuSigned by:

*Clifford Birnbaum*

2655D95471BA487

Clifford Birnbaum
Regional Director for JTH Tax LLC
d/b/a Liberty Tax Service